IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SHENECQUA BUTT, et al | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 09-4285 |
| | : | |
| UNITED BROTHERHOOD OF | : | |
| CARPENTERS & JOINERS OF | : | |
| AMERICA, et al | : | |

| | | |
|---|---|---|
| THERESA HOWARD | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 13-374 (consolidated with 09-4285) |
| | : | |
| METROPOLITAN REGIONAL | : | |
| COUNSEL OF CARPENTERS & | : | |
| JOINERS OF AMERICA, et al | : | |

## MEMORANDUM OPINION ON MOTION IN LIMINE
## DR. PHILIP L. TAYLOR

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                    June 16, 2016

### I.    Introduction

Defendants Metropolitan Regional Council of Carpenters and Joiners of America, Edward Coryell and Mark Durkalec (collectively, the "Union Defendants") and the Philadelphia Housing Authority ("PHA"), bring Motions in Limine seeking to preclude expert psychological testimony from Dr. Philip L. Taylor.  Docs. 141, 142.

This matter comes before the Court pursuant to 28 U.S.C. § 636(b)(1)(A) and Fed. R. Civ. P. 72(a).  In conformity with the scheduling orders governing these cases, Plaintiffs obtained reports from Dr. Taylor in August 2015.  The Union Defendants and the PHA filed their Motions in Limine on November 9, 2015.  Docs. 141, 142.   Plaintiffs filed oppositions on

December 21, 2015.  Docs. 155, 156 and 157.  The Union filed replies on December 30, 2015.  Doc. 160.

For the reasons that follow, the Motions shall be granted in part and denied in part.  Specifically, Dr. Taylor will be permitted to testify as to his diagnosis of plaintiffs Shenecqua Butt and Theresa Howard ("Plaintiffs"), but he may not offer legal conclusions nor comment upon the purported credibility of either plaintiff.

## II.      Factual Background

The relevant procedural and factual background of this case is well known to the parties and their counsel so we dispense with setting it out other than with respect to that pertinent to the resolution of these motions.  Dr. Taylor was retained through counsel to undertake psychological examination of Ms. Butt and Ms. Howard in the summer of 2015.  The record reflects that he interviewed Plaintiffs on August 7, 2015 and issued reports on August 10, 2015.  *See* Doc. 141-5 (Howard Report);[1] Doc. 142-3 (Butt Report).  He diagnosed both Plaintiffs with post-traumatic stress disorder and adjustment disorder.  He further diagnosed Ms. Butt with chronic pain.  By his reports, he has attributed these conditions to Defendants' alleged discriminatory employment practices.

## III.     Discussion

### A.  Legal Standards

Federal Rule of Evidence 702 governs the admissibility of expert testimony.  The rule "has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized

---

[1] Dr. Taylor supplemented the Howard Report two days after he initially issued it to claim that Defendant PHA was also responsible for the conduct giving rise to Ms. Howard's post-traumatic stress disorder and adjustment disorder.  *See* Doc. 141-5 at 10-11.

knowledge; and (3) the expert's testimony must assist the trier of fact." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008).  "[T]he testimony must be reliable; it must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; [and] the expert must have good grounds for his on her belief." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003) (citations omitted).  Determining if testimony will assist the trial of fact "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999) (citations omitted).  "[E]ven if an expert's proposed testimony constitutes scientific knowledge, his or her testimony will be excluded if it is not scientific knowledge *for purposes of this case*." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994) (emphasis in original).

### B.  Application to Taylor's Opinions

Defendants concede that Dr. Taylor was qualified to render opinions as an expert in the field of psychology.  Doc. 142-1 at 8 ("Dr. Taylor is a qualified psychologist"); Doc 141-1 at 5 ("Defendant PHA does not dispute that Dr. Taylor is highly qualified and reliable in the area of psychology.").  However, Defendants argue that Dr. Taylor's purported opinions impermissibly stray beyond the bounds of his expertise to the extent they offer legal conclusions and credibility determinations.[2]  We discuss each below.

---

[2] Defendants also argue that Dr. Taylor's opinions are the result of improper collaboration with his wife, a retired employment discrimination attorney.  Doc. 141-1 at 11-13; Doc. 142-1 at 10-11.  However, the cases Defendant PHA cites for this argument appear to apply the test of whether the expert is improperly offering a legal opinion.  Defendants cite no case, and the Court is aware of none, for the proposition that such collaboration in and of itself is enough to render Dr. Taylor's opinion inadmissible.  The Court's rulings *infra* prohibiting Dr. Taylor from

### a.   Improper Legal Conclusions

Although Federal Rule of Evidence 704 will permit an expert to offer testimony "that embraces an ultimate issue to be decided by the trier of fact," an expert is "prohibited from rendering a legal opinion" as it would usurp the District Court's pivotal role in setting out the legal requirements involved in the case to the jury.  *See Berckeley Investment. Group., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006).

Here, Dr. Taylor improperly proffered many legal conclusions in his report, including the following instances:

- Referring to Ms. Howard's sexual assaults, the report states "instead of getting redress for these assaults, Ms. Howard was forced to endure further retaliatory harassment for complaining." Doc. 141-5 at 5 (Howard Report);

- Referring to the scores of a test administered to Ms. Howard, Dr. Taylor stated "…she is highly distressed and disturbed as a result of the sexual assault, the harassment, the discrimination [sic] which she has endured for many years." *Id.* at 9;

- After concluding that Ms. Howard suffered from post-traumatic stress disorder and adjustment disorder, Dr. Taylor stated that these conditions were "caused by the intentional racial and gender harassment, and racial and sex discrimination perpetrated by" defendants. *Id.* at p. 11;

- Similarly, Dr. Taylor concluded that Ms. Butt's "Post Traumatic Stress Disorder, Adjustment Disorder and Chronic Pain [were] caused by the intentional, pervasive and severe racial and sexual harassment and discrimination perpetrated by" the Union Defendants.  Doc. 142-3 at 14;

offering legal conclusions should cure this defect, and Defendants remain free to cross examine Dr. Taylor about the collaboration at trial.

- Dr. Taylor also claimed as to Ms. Butt that "Attorney Gelman escalated the harassment by bringing a wiretap charge against [her]" after Ms. Butt recorded a telephone call between herself and one of the individual defendants. *Id.* at 7.

As we conclude these all represent opinions of legal conclusions, they are not opinions that may be presented to the jury. *See Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) (allegations that a plaintiff "was sexually harassed" and experienced "disparate treatment based on her gender and retaliation for making complaints about discrimination and sexual harassment" all constituted legal conclusions for purposes of a 12(b)(6) motion to dismiss, even if the underlying facts of the encounters did not). Dr. Taylor may opine on the psychological tests he ran on the Plaintiffs and his expert opinions about their mental states. He may further explain how information the Plaintiffs provided during his clinical interviews played a role in his analysis. He may not, however, offer legal conclusions about the Defendants' alleged conduct.

### b. Credibility Determinations

The credibility of witnesses is left to the purview of the jury and is not to be the subject to an opinion of an expert witness. "[I]t is generally inappropriate for a witness to judge the credibility of another witness." *Griggs v. BIC Corp.*, 844 F. Supp. 190, 201 (M.D. Pa. 1994), *aff'd*, 37 F.3d 1486 (3d Cir. 1994). The Third Circuit has affirmed a past decision of this Court excluding testimony from a treating physician regarding the veracity of plaintiff's purported complaints even though the complaints played a role in the physician's diagnosis. *Coney v. NPR, Inc.*, 312 F. App'x 469, 474 (3d Cir. 2009) (unpublished) (citations omitted) ("The District Court here acknowledged that a physician's consideration of his patient's subjective complaints of pain is important as it may play a part in forming the basis of his opinion. Indeed, the record

indicates that Dr. Park expressed his reliance on Coney's subjective complaints in forming his diagnosis. Yet as the District Court also recognized, this does not mean . . . that Dr. Park should have been able to testify more broadly as to his opinion concerning the truthfulness and reliability of Coney's complaints.").

In this case, Dr. Taylor's reports express his views that he believes Ms. Butt and Ms. Howard are credible, in part because their interviews with him were consistent with their deposition testimony. *E.g.*, Howard Report at 10 ("Ms. Howard presented as totally honest, extremely credible, and as with Ms. Butt, her remarks were consistent with previous statements in her Deposition, consistent with her Therapy notes, and consistent with her test results."); Butt Report at 14 (same). At trial, Dr. Taylor will not be allowed to opine on either Ms. Butt's or Ms. Howard's credibility. Nor will he be allowed to comment on the consistency, if any, of what Plaintiffs said to him as compared to what they said in their depositions in this case. *See FedEx Ground Package Sys., Inc. v. Applications Int'l Corp.*, 695 F. Supp. 2d 216, 222 (W.D. Pa. 2010) (citations omitted) ("It is the duty of the jury, not an expert witness, to decide credibility. To allow such testimony at trial would usurp the court's duty to instruct the jury on the law and the jury's role of determining credibility of witnesses and applying the law to the evidence.").

## IV.    Conclusion

For the reasons outlined above, we preclude Dr. Taylor from offering testimony that constitutes legal conclusions or credibility determinations. Acknowledging that sometimes distinguishing facts relied on in forming expert opinions and handling of legal conclusions may be somewhat "hazy," we further recommend that the trial Court make determinations predicated upon the specific questions and their context at the time of trial and permit those questions which do not invade either the function of the Court or the jury as to credibility determinations.

6

An appropriate Order follows.

BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE