IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN M. PADDICK | : | CIVIL ACTION |
|    Movant | : | |
| v. | : | NO.: 09-4285 |
| | : | |
| SHENECQUA BUTT; THERESA HOWARD; and. | : | |
| ELLEN BRONSON, a/k/a ELLEN BROWN | : | |
|    Respondents | : | |

| | | |
|---|---|---|
| RYAN M. PADDICK | : | CIVIL ACTION |
|    Movant | : | |
| v. | : | NO.: 13-374 |
| | : | |
| THERESA HOWARD | : | |
|    Respondent | : | |

## MEMORANDUM AND OPINION

DAVID R. STRAWBRIDGE                                                                          May 24, 2018
UNITED STATES MAGISTRATE JUDGE

      Before the Court is the issue of whether a fee award in quantum meruit to a terminated attorney should be taken from the fee of the successor attorney, or whether the clients should be made to pay successor attorney's full fee in addition to the fees of the terminated attorney. This issue arose after we awarded terminated attorney Ryan Paddick, Esq.'s ("Paddick") $54,562.73 when we received telephone calls from two of the three plaintiffs (respondents in the lien action) asking where the money to pay the award was to come from—their portion of the settlement proceeds or from the portion paid to current attorney Sandra Thompson, Esq.'s ("Thompson").

We had not addressed this issue in our original Memorandum Opinion resolving the lien issue.[1] (Doc. 356.)[2]

On May 3, 2018, following receipt of these calls, we issued an Order to Show Cause that Thompson tell us "why her clients should not be entitled to less than 65% of the settlement fund (less costs), and why the $54,562.73 award granted to Mr. Paddick, who we determined substantially contributed to the creation of the settlement fund, should not be deducted from her portion of her contingency fee." (Doc. 358.) She responded (Doc. 362) and we held a hearing on May 16, 2018.

We have considered the lengthy history of this dispute, the obligations of the successor attorney, Thompson, as well as equitable considerations. As our analysis centers upon the actions (and inactions) of Thompson as Plaintiff's counsel, we set out the legal standards governed by the Pennsylvania Rules of Professional Conduct and relevant case law. We then analyze Thompson's actions as they relate to this question as the case progressed. We ultimately determine that Paddick's award must come from Thompson's fee.

**I. Legal responsibilities of counsel**

The Pennsylvania Rules of Professional Conduct require an attorney to "provide. . . a client with an informed understanding of the client's legal rights and obligations and explain… their practical implications" and to "act with commitment and dedication to the interests of the client and with zeal in advocacy upon the client's behalf." (Pa. Prof. Conduct Rule 1.3 cmt, Preamble.)

---

[1] We did not address this issue in our earlier Memorandum and Opinion because we believed that Thompson would appreciate that Paddick's award would have to come from her fee.

[2] As we are writing primarily for the parties who are familiar with the particulars in the case, we cite primarily to the 09-4285 docket designated for the consolidated cases unless otherwise noted.

In so doing, counsel must be mindful of potential conflicts of interest. As to the lawyer-client relationship, a conflict of interest will exist if there is a "significant risk" that representation of a client would be "materially limited" by "a personal interest of the lawyer." (*Id*. at Rule 1.7.) Under Rule 1.7(a) provides that "a conflict of interest exists if there is a significant risk that the lawyer's representation will be materially limited by the lawyer's own interest in the fee agreement. . . . [T]he lawyer may accept or continue the representation with the informed consent of each affected client." (*Id*. at Rule 1.8 cmt.)

The lawyer may continue to represent a client in spite of a conflict if the lawyer "reasonably believes that the lawyer will be able to provide competent and diligent representation to each affect client" and "each affected client gives informed consent." (*Id*. at Rule 1.7(b).) Informed consent occurs when "consent by a [client] to a proposed course of conduct after the lawyer has communicated adequate information and explanation about the material risks of and reasonably available alternatives to the proposed course of conduct." (*Id*. at Rule 1.0(e).)

The common law also imposes fiduciary duties on attorneys in their dealings with their clients. *See Maritrans GP Inc. v. Pepper, Hamilton & Scheetz*, 602 A.2d 1277, 1283 (Pa. 1992) ("Our common law imposes on attorneys the status of fiduciaries *vis a vis* their clients; that is, attorneys are bound, at law, to perform their fiduciary duties properly. Failure to so perform gives rise to a cause of action. It is 'actionable.'") Attorneys who violate their duties to their clients may be ordered to forfeit or disgorge their fees. *Id*. at 1285-86 ("A fiduciary ... may not perfect his claim to compensation by insisting that although he had conflicting interests, he served his several masters equally well or that his primary loyalty was not weakened by the pull of his secondary one. Only strict adherence to these equitable principles can keep the standard of

conduct for fiduciaries 'at a level higher than that trodden by the crowd.'") (citing *Woods v. City Nat'l. Bank & Trust Co.*, 312 U.S. 262, 269 (1941) (quoting Justice Cardozo)).

II. Analysis

As the docket reflects, I have been involved in these matters since September 2013 when I presided over a settlement conference upon an order of reference from Judge Baylson. That conference did not result in a settlement, but I remained involved and upon a further order of reference, prepared a comprehensive Report and Recommendation on both Defendants' Motions for Summary Judgment. (Doc. 205.) On May 19, 2017, the parties consented to magistrate judge jurisdiction. (Doc. 232.) I set the cases for trial to commence on October 4, 2017. Prior to trial, I ruled on various pre-trial motions. (Docs. 302 & 303.)

At the beginning of my involvement, all plaintiffs in the cases were represented by Paddick. In May 2015, however, Paddick was terminated by three of the plaintiffs Shenecqua Butt, Ellen Brown (previously Bronson), and Theresa Howard. They then hired Thompson as successor counsel. We will discuss what we see as the various instances which we believe should have given rise to the issue of a conflict of interest on Thompson's part.

**A. When signing of the contingency fee agreement in 2015**

Thompson entered into a contingency fee agreement ("CFA") with her new clients that provided for a 35% contingency fee and limited representation "up to including Eastern District of Pennsylvania, does not include appeals to higher courts." (Ex. R-13.)[3] She was aware of Paddick's involvement in the case when entering this agreement. The CFA stated in part that she "is substituting as counsel for Ryan Paddick, Esq., but she is not liable for anything Atty Paddick

---

[3] Exhibits from the attorney lien hearing (held in February 2018) are referred to as "R-" for Respondents' exhibits, and "M-" for Movant's exhibits. Exhibits presented at the hearing held on May 16, 2018 are identified as "5/16/18 Hearing Ex."

4

has done or has failed to do." (*Id.*) On May 1, 2015, less than a week after she and her new clients signed the CFA, Thompson emailed Paddick noting that she "saw an email stating that you wanted to preserve the time you had invested in this case. I assume if Tanya Mitchell stays with you, then you can reap benefit from whatever time you spent." (Ex. R-1 at 9.) She added "I do not generally get in between attorney-client disputes. If either of you decide to pursue an action against the other for breach of contract, that is not my business." (*Id.*)

When questioned by the Court at the February 2018 hearing, Thompson stated that she did not discuss with the new clients any risk to them posed by a potential claim by former counsel. In so doing, she failed to fulfill her responsibility.

### B. Paddick's November 2017 Motion to Intervene

As the trial date approached, the parties reported that the cases were settled. Our work was not completed, however, as Paddick sought to intervene to assert a charging lien on the fund created. (Docs. 305 & 306.) On November 14, 2017, we called for briefing on the motions and ordered that "To the extent that any payments are made by any Defendants to any Plaintiffs before the resolution of these motions, such payments shall be kept in counsel's respective escrow accounts. Distribution of funds will be subject to the resolution of pending motions." (Doc. 309.)

Thompson still failed to consider that she was in a clear conflict situation as Paddick was asserting a lien upon "the settlement proceeds obtained by respondents Shenecqua Butt, Theresa Howard, and Ellen Bronson" in which she had an interest. (Doc. 306.) We would have expected at this point that there would have been an open conversation about the clients' best interests and the potential impact of the asserted lien on the clients. What we learned from the hearing, however, was that there was no clear discussion at all. Rather, putting her own interest ahead of

5

the clients' interests, Thompson responded by having her clients agree that she could take the full 35% contingency fee ($133,000) meaning that any award from our resolution of the attorney lien would have to come from the clients.

Thompson defends this position by stating that the clients were pleased that a settlement had been reached and wanted her to continue her representation in fighting off the Paddick lien. She failed, however, to tell her clients that the Paddick award could be assessed from her fee. She also failed to tell her clients was that there was a strong possibility that she would not be permitted to withdraw representation of them once Paddick filed his lien. Rule 5.1 of the Local Rules of the United States District Court for the Eastern District of Pennsylvania provides that "[a]n attorney's appearance may not be withdrawn except by leave of court, unless another attorney of this court shall at the same time enter an appearance for the same party." We would likely not have permitted Thompson to withdraw, as we view her continued representation through the resolution of the attorney lien dispute part and parcel of the "representation up to including Eastern District of Pennsylvania" within the CFA. Permitting an attorney to withdrawal and collect their full fee while there are pending liens on the settlement fund would disadvantage clients by leaving them without representation or having to obtain new counsel in this critical stage of the process. While Thompson had an obligation to protect the settlement fund from Paddick's lien if possible, for the clients and herself, she failed to openly discuss the full ramifications of the situation.

### C. Settlement discussions

Upon receipt of these briefs, and acting under the strong belief that this dispute could be resolved by allocating counsel fee between the two lawyers, we referred the matter to Magistrate Judge Rice to facilitate settlement discussions. This effort however never got off the ground as

Thompson stated that her clients were not willing to settle.  We now understand why, as following the telephone conference with Judge Rice, she wrote to her clients on December 18, 2017 telling them that "[t]hey [apparently referring to me and Judge Rice] cannot interfere with my contract.  I believe the caselaw is clear that Attorney Paddick's claims are not against the other attorney.  He can only make claims against you.  YOU decide what you will or will not give to Attorney Paddick."  (5/16/18 Hearing Ex. 2 at 8.)  Thompson simply was unwilling to accept that there was exposure to her own fee.

As is evident from testimony and exhibits produced during the May 16, 2018 hearing, Thompson had not explored with her clients the possibility of the "material risks of" and "reasonably available alternatives" to the chosen course of conduct—that Paddick was not due any fee.  Rather, she told her clients that "Paddick's claims are not against the other attorney," meaning her; that Paddick only makes claims "against you;" and only "YOU decide what you will or will not give to [him.]"  (*Id*.)  These comments cannot be considered in any way to constitute "an informed understanding of the client's legal rights and obligations" explaining "their practical implications."  (Pa. Prof. Conduct Rules Preamble.)  They flatly ignore that this was presented as a claim upon the fund.  (Doc. 306.)

### D.  When partially disbursing funds to her clients

On December 20, 2017, we held a telephone conference with the counsel.  (Doc. 320.) Thompson included her clients on the call, and maintained her clients' position that they would not present any settlement offer to Paddick as they believed he was not owed anything.  On December 28, 2017, we issued an order granting Paddick's motion to intervene and vacating our earlier order.  We permitted disbursement of "*as appropriate* that portion of the fund in excess of Mr. Paddick's asserted liens."  (Doc. 321) (emphasis added.)

Following this order and the receipt of settlement proceeds from the defendants, Thompson met with her clients to discuss disbursing the funds. She presented to them a document entitled "Acknowledge of Settlement Disbursement and Case Closure" as they received their partial payment disbursement. She has produced one such "Acknowledgement" signed by Ms. Brown on January 26, 2018. This document reaffirmed Thompson's perceived entitlement to the full 35% from the CFA and even included an indemnification clause providing that the client would:

> indemnify, hold harmless and defend Sandra Thompson, Esq. and Law Office of Sandra Thompson, LLC against any and all claims or liabilities that may be asserted by any person, business or governmental agency for claims that there was a valid lien and monies should not have been released to me, including payment of charges, assessments, interest, penalties, attorneys' fees or other liabilities, arising out of and pertaining to such payments to me.

(5/16/18 Hearing Ex. 7.)

To the extent that Thompson reads this to reflect that she was entitled to indemnification, we find, in the context of the record here, that this presumed entitlement even more firmly establishes that Thompson has put her own self-interest above that of her clients. It is unconscionably imposed. We hold that it cannot be enforced against the clients as it pertains to Paddick's lien. *See Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007) (holding that "a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it.")

### E. Calls from Thompson's clients and April 27, 2018 Memorandum Opinion

In early April of 2018, before our Memorandum Opinion was issued, we received a call from Ms. Brown requesting clarification on whether Paddick's fee, if it was to be awarded,

would be paid from the plaintiffs or Thompson's share of the settlement fund. We referred her to her attorney and directed Thompson to confirm that she followed up with her client about these concerns. On April 27, 2018, we issued a lengthy Memorandum Opinion finding that Paddick was due $54,562.73 under a quantum meruit theory. (Doc. 356.) After the issuance of our opinion, we received further calls, this time from both Ms. Brown and Ms. Butt asking for clarification of our order, pointing out correctly that we did not indicate where Paddick's award was to come from.

These calls prompted our May 3, 2018 Order to Show Cause (Doc. 358) and the hearing of May 16, 2018 which followed. During the hearing, testimony was taken from Thompson, Butt, Brown, and Howard. At the end of the argument I advised counsel that I would enter an order reflecting my determination that the award should come from Thompson's share.

## III. Conclusion

The consequence of what Thompson would like us to do would leave her clients with just over of half (51%) of their settlement proceeds after Thompson has taken the full 35% ($133,000) and her clients paid the full amount of the Paddick award. We refuse to accept that this is an equitable result. *Malonis v. Harrington*, 816 N.E.2d 115 (Ma. 2004) discusses the issue of "[w]hen a client discharges one attorney before settlement is reached and retains another on a contingency fee basis, who bears the cost of paying the discharged attorney the fair value of his legal services and expenses, the client or the successor counsel?" (*Id*. at 122.) The *Malonis* Court stated:

> The significant point is that the matter should be resolved by express agreement with the client, based on a frank discussion of the matter, thus allowing an intelligent discussion as to which course is in the client's best interests. Absent such discussion, it is likely (as occurred here) that the client will simply assume that both lawyers will be paid out of the single contingency fee, and

will fail to appreciate the potential that fee claims above that amount may be made. Protection of the client's interests—and the client's ability to make a reasoned choice with respect to any settlement offers—requires that this important subject be addressed with clarity and specificity. . . . *A client should never be made to pay twice*. To avoid disputes in the future, we would advise successor counsel, before he or she receives the case, to confer with the client on the issue and to execute a written agreement unambiguously identifying the party responsible for payment of former counsel's reasonable attorney's fees and expenses.

(*Id*. at 123) (emphasis added.)

The result Thompson calls for is manifestly unjust. An appropriate Order follows.

BY THE COURT:

 /s/David R. Strawbridge, USMJ
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE