IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RYAN M. PADDICK, | : | CIVIL ACTION |
|     Movant | : | |
| v. | : | NO.: 09-4285 |
| | : | |
| SHENECQUA BUTT; THERESA HOWARD; | : | |
| ELLEN BRONSON, a/k/a ELLEN BROWN; | : | |
|     Respondents. | : | |
| | : | |

| | | |
|---|---|---|
| RYAN M. PADDICK, | : | CIVIL ACTION |
|     Movant | : | |
| v. | : | NO.: 13-374 |
| | : | |
| THERESA HOWARD, | : | |
|     Respondent. | : | |

December 27, 2018

## MEMORANDUM OPINION

Movant Ryan Paddick, Esq. seeks the entry of a civil contempt order against Sandra Thompson, Esq. for her failure to comply with a valid court order we entered June 18, 2018. By that order, we compelled Ms. Thompson to disburse a portion of a settlement fund to which we determined he was entitled.[1] Paddick presently seeks the entry of an order that she be found in civil contempt and must compensate him for attorney time incurred due to this contemptuous non-compliance with our June 18, 2018 order. Thompson objects.

---

[1] The dispute arose from Paddick's substantial contribution to the creation of a settlement fund for the underlying Plaintiffs. We issued an April 27, 2018 order with accompanying memorandum opinion finding that Paddick had properly asserted a charging lien against the fund and was due $54,562.73 on a quantum meruit basis. (*See* Doc. 356). On May 24, 2018, in response to Thompson's position that Paddick's fee was to come from the clients' portion of the fund, we issued a further order and memorandum opinion mandating that "Paddick's award must come from Thompson's fee." (Doc. 368.) Despite that order, which was reaffirmed in a June 18, 2018 order, Paddick did not receive payment of his award until after October 9, 2018.

1

This Court held an evidentiary civil contempt hearing on the motions on November 15, 2018. Thompson and Paddick both appeared and presented testimony. For reasons set forth below, we will grant the motion and enter an order finding Thompson in civil contempt for failing to comply with our order compelling her to disburse Paddick's award.

**I.      LEGAL STANDARD**

It is elemental that a district court possesses the "inherent power to enforce compliance with [its] lawful orders through civil contempt." *Spallone v. United States*, 493 U.S. 265, 276 (1990) (quoting *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Civil contempt "is remedial, and for the benefit of the complainant." *Int'l Union, United Mineworkers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994) (quoting *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 441 (1911)). If successful in a civil contempt proceeding, the complainant is entitled to costs of investigating violation of the court order [and] preparing for and conducting the contempt proceeding, and attorneys' fees. *See Robin Woods Inc. v. Woods*, 28 F.3d 396, 400-01 (3d Cir. 1994). These sanctions are designed to place the complainant in the position he would have been had the contemnor complied with the court order. *Id.* at 400.

"Civil contempt sanctions . . . fall into two general categories." *Harris v. City of Phila.*, 47 F.3d 1311, 1328 (citing *Bagwell*, 512 U.S. at 829). One category is designed to compensate complainants "for losses sustained by [the contemnor's] disobedience." *Robin Woods Inc.*, 28 F.3d at 400. The other is calculated "to coerce the defendant into compliance with the court's order." *Harris*, 47 F.3d at 1328. Coercive contempt sanctions "must be capable of being purged" to be properly characterized as civil, rather than criminal. *Id.* (citing *Bagwell*, 512 U.S. at 828). Contempt arising from "discrete, readily ascertainable acts, such as . . . payment of a judgment,

2

properly may be adjudicated through civil proceedings since the need for extensive, impartial factfinding is less pressing." *Bagwell*, 512 U.S. at 833.

To hold a party in civil contempt, the complainant must establish three elements by clear and convincing evidence: (A) a valid court order existed; (B) the contemnor had knowledge of the order; and (C) the contemnor disobeyed the order. *John T. ex rel. Paul T. v. Delaware Cnty. Intermediate Unit*, 218 F.3d 545, 552 (3d Cir. 2003) (quoting *Harris*, 47 F.2d at 1326). "[A]mbiguities must be resolved in favor of the party charged with contempt," *see id.*, and courts "should hesitate to adjudge a defendant in contempt when there is ground to doubt the wrongfulness of the conduct." *F.T.C. v. Lane Labs—USA, Inc.*, 624 F.3d 575, 582 (3d Cir. 2010). A finding of willfulness on the part of the contemnor, however, is unnecessary because "good faith is not a defense to civil contempt." *Id.* (internal quotation marks and citations omitted). Before a finding of contempt is made, "due process . . . require[s] notice and a hearing . . . so that the parties 'have an opportunity to explain the conduct deemed deficient . . . and that a record will be available to facilitate appellate review.'" *Harris*, 47 F.3d at 1322 (quoting *Newton v. A.C. & S. Inc.*, 918 F.2d 1121, 1227 & n. 5 (3d Cir. 1990)).

## I. FINDINGS OF FACT [2]

On April 27, 2018, this Court entered an order and issued a memorandum opinion concluding that Paddick was due a quantum meruit sum of $54,562.73 for his substantial contribution to the creation of a settlement fund. [3] (Doc. 356.) We ordered that Thompson, "as custodian of the escrow account," release funds to Paddick within 10 days. (Doc. 357.) Although we intended that Paddick's award was to come from Thompson's fee, we learned from her client Ms. Ellen Brown that she took the contrary position—that Paddick's award should come from her clients' portion of the award. (*See* Doc. 358.) In response to this contention, we entered a May 3,

---

[2] This case has an extensive and difficult history which we incorporate by reference to our memorandum opinions dated April 27, 2018, May 24, 2018, and June 18, 2018. (Docs. Nos. 356, 368, 380.) For the present motion, we have reviewed Paddick's Motion for Contempt (Doc. 393) ("Contempt. Mot."), Thompson's Response in Opposition (Doc. 406) (Resp.) and Brief in Opposition to the Motions for Contempt (Doc 406-5) (Opp. Brief), Paddick's Pre-Hearing Memorandum (Doc. 444) (Paddick Memo.), Thompson's Pre-Hearing Memorandum (Doc. 443) (Thompson Memo.), Paddick's post-hearing Summary of Costs and Time (Doc. 445) (Costs. Summ.), Thompson's Response (Resp. to Costs) (Doc. 447) and all exhibits attached thereto. We held a hearing on November 14, 2018, at which Paddick and Thompson presented their positions and submitted additional exhibits for consideration.

[3] A brief history may prove helpful. After their consolidated gender and race-based discrimination claims against the United Brotherhood of Carpenters and Joiners of America, et al. (the "Union") were dismissed following the entry of summary judgment against them in January 2012, the underlying Plaintiffs retained Paddick to represent them on appeal. Paddick prevailed, and continued representing them pursuant to a contingency fee agreement ("CFA") until May 2015, when three out of the four Plaintiffs terminated him in favor of retaining Ms. Thompson. In September 2017, as trial was rapidly approaching, the parties reached a settlement agreement and the claims of all four underlying Plaintiffs were dismissed. Ms. Thompson held the settlement funds as custodian of the escrow account.
    After he was terminated, but before the case reached settlement, Paddick put Ms. Thompson on notice of his lien claims as against any future recovery. (*See, e.g.,* Doc. 306-8) (October 2015 email from Paddick to Thompson stating that "hourly [fees] from the time spent on the appeal remains due . . . [and] fees remain due on the work I did on the cases prior to your stepping in"). He was unsuccessful, however, in convincing Thompson to honor his lien, and on November 13, 2017 he filed a Motion for Recognition and Enforcement of Lien (Doc. 305-306), which we resolved with the issuance of our April 27, 2018 order and accompanying memorandum opinion.

2018 order to show cause as to why Paddick's award should not be deducted from Thompson's portion of the contingency fee. (*Id.*) By Order dated May 7, 2018, we scheduled a hearing on the fee dispute and stayed disbursement until May 17, 2018. (Doc. 361.) A hearing was held May 16, 2018 (Doc. 365), and on May 18, 2018, the Court again stayed disbursement pending further order. (Doc. 366.) In our order with accompanying memorandum opinion dated May 24, 2018, we concluded that "Paddick's award must come from Thompson's fee." (Doc. 368.) We then ordered her to "disburse to Paddick his award . . . by June 1, 2018." [4] (Doc. 369.)

Thompson filed a Motion to Stay on June 1, 2018, asking us to stay our May 24, 2018 order compelling payment. (Doc. 370.) We denied that motion by our order and accompanying memorandum opinion of June 18, 2018, concluding that she "ha[d] not demonstrated a likelihood of success on the merits" warranting intervention. (Doc. 380.) We further directed her to "disburse funds in her escrow account in accordance with our May 24, 2018 order by June 25, 2018." (Doc. 381.) [5]

As of June 26, 2018, Thompson had not complied with the Court's June 18, 2018 order to disburse funds. Accordingly, Paddick filed a Motion for Order to Issue a Writ of Execution on the escrow account where Thompson maintained the settlement funds. (Doc. 390.) He followed with his present contempt motion on July 2, 2018. We granted his motion for a writ of execution on

---

[4] In response to Thompson's complaint that our May 24, 2018 order compelled payment more quickly than Federal Rules of Civil Procedure 62(a) required, we clarified in a June 4, 2018 Order that we would "take no further steps to enforce our May 24, 2018 order . . . until fourteen days have passed since the issuance of that order." (Doc. 372.) Fourteen days passed on June 7, 2018.

[5] Thompson filed a June 26, 2018 motion to stay in the United States Court of Appeals for the Third Circuit, which was denied August 23, 2018. *Butt v. United Brotherhood*, No. 18-2272 (3d Cir. Aug. 23, 2018); (Doc. 395 at 2.) Although that Court's order is dated July 17, 2018, we note that it was docketed August 23, 2018 and that Thompson uses August 23 as the operative date. (Doc. 443 at 4.)

July 3, 2018, which the Clerk of Court issued the same day.[6] We now resolve the contempt motion.

Having directed issuance of the writ, we assumed that Paddick would be paid and this matter resolved. To that effect, we issued an August 16, 2018 Order to Show Cause as to why his motion for contempt should not be dismissed as moot. (Doc. 410.) Paddick's August 22, 2018 response informed us that Thompson had still "not paid any part of the funds." (Doc. 411. at 1.) Thompson rebutted that Paddick's claims "were moot as the Writ of Execution was granted addressing Paddick's claims" and asserted that she "did not have the authority to move those amounts awarded to Paddick from her IOLTA account." (Doc. 414 at 2.) Paddick, however, replied that "nothing was preventing her from disbursing to [him] prior to service of the Writ or directing her bank to pay in accordance with the Writ after service."[7] (Doc. 418-2.)

Paddick ultimately turned to Thompson's bank, Fulton Bank, seeking payment. On September 11, 2018, he filed a praecipe for judgment upon Fulton Bank as garnishee of Thompson's IOLTA account. (Doc. 421.) We granted that praecipe in an October 9, 2018 order with accompanying memorandum opinion compelling Fulton Bank to disburse $57,960.28 to Paddick, which sums encompassed the judgment, nominal costs, and pursuant to Pennsylvania law, $3,250.00 for attorney time incurred in relation to execution upon Fulton Bank. *See generally Paddick v. Butt*, No. 09-4285, 2018 WL 4899310 (E.D. Pa. Oct. 9, 2018); Doc. 431. What remains

---

[6] By this Court's July 3, 2018 order, we also compelled Thompson to pay her former clients their portion of the settlement fund – which she had not done in full. (Doc. 394.) Pursuant to that order, Thompson mailed her clients' final payments on July 10, 2018. (*See* Resp. at 4-5.)

[7] We learned that Paddick's first two attempts to serve the writ were ineffective and that it was not until July 26, 2018 that he effectively served Thompson's IOLTA account at Fulton Bank. (*See* Doc. 427 at 2-3.)

to be determined, however, is Paddick's present request for outstanding unpaid costs totaling $17,945.50. (*See* Costs. Summ. at 2.)

## II. DISCUSSION

We must determine whether Thompson is in civil contempt for failing to comply with a court order. As discussed above, this requires that we find by clear and convincing evidence that (A) a valid court order existed; (B) the contemnor had knowledge of the order; and (C) the contemnor disobeyed the order. *John T. ex rel. Paul T.*, 318 F.3d at 552 (quoting *Harris*, 47 F.2d at 1326). Here, as set forth below, Paddick has established by clear and convincing evidence that the three elements necessary to establish contempt are present.

### A. Existence of Valid Court Order

Of the several orders this Court entered compelling Thompson to disburse funds to Paddick, it is the June 18, 2018 order that gives rise to this contempt motion. In that order, we mandated that Thompson "disburse funds in her escrow account in accordance with our May 24, 2018 order by June 25, 2018." (Doc. 381.) Our May 24, 2018 order had unambiguously compelled Thompson to "disburse to Paddick his award . . . by June 1, 2018." (Doc. 369.) Thompson nowhere suggests that either order is in any way unlawful, improper, or invalid.[8] This element is clearly met.

---

[8] Thompson seems to argue that her request for a stay before the United States Court of Appeals for the Third Circuit abrogated her duty to comply with the Court's June 18, 2018 order. *See* Opp. Brief. at 2; Pre-Hearing Memo. at 4-5. To the extent that this argument challenges the validity of the Court's June 18 order, it is without merit. It is well settled that pendency of appeal does not excuse obedience with a valid court order. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal."); *see also Island Creek Coal Sales Co. v. City of Gainesville, Fla.*, 764 F.2d 437, 440-41 (6th Cir. 1985) ("Where, as here, the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes.").

### B. Thompson's Knowledge of Valid Court Order

The impact of the Court's June 18, 2018 order was eminently clear to Thompson. Indeed, after the June 25, 2018 deadline passed, she filed a June 26, 2018 motion for a stay in the Third Circuit. (*See* Resp. to Costs at 3.) Whatever her opinions on the court's order may have been, it is clear that she knew about it. [9] Such is obvious from her filings and was apparent at the hearing. This element is satisfied.

### C. Thompson's Noncompliance with the Valid Court Order

Thompson does not dispute the fact that she failed to comply with our order compelling payment by June 25, 2018. It was not until after October 9, 2018—over three months later—that Paddick received payment. [10] This element is clearly met. The issue, then, is whether anything excuses Thompson's noncompliance with the June 18, 2018 order.

### D. Whether Any Valid Defenses Exist

We understand Thompson to assert two defenses: that the writ of execution prevented her from complying with our order, and that her due process right to appeal vitiated our June 18, 2018 order. We consider each in turn.

---

[9] Thompson argues that she "interpreted [the Court's July 3, 2018 order] as mandating her to maintains [sic] funds in her IOLTA account." Thompson Memo. at 4. While we find difficulty discerning her exact argument, we take it that she sees conflict between the June 18, 2018 and July 3, 2018 orders. To the extent that this argument challenges her knowledge of the Court's order, it is without merit. The June 18, 2018 order unambiguously directed her to "disburse funds." The July 3, 2018 order, which granted Paddick's motion for a writ of execution and "direct[ed] payment from Thompson's IOLTA account," accords with the earlier order. We fail to see how Ms. Thompson would have been confused.

[10] At the November 15, 2018 hearing, Paddick confirmed that Fulton Bank paid him pursuant to our October 9, 2018 memorandum opinion and order compelling the same. We do not know, however, the exact date on which payment was made.

1. **Impossibility**

Thompson contends that the writ of execution placed a "legal hold" on her account that prevented her from disbursing funds to Paddick.[11] Paddick argues that "nothing was preventing her from disbursing to [him] prior to service of the Writ or directing her bank to pay in accordance with the Writ after service." (Doc. 418-2 at 1.)

A charge of civil contempt may be defended with an assertion that the contemnor was unable to comply with the order in question. *See United States v. Rylander*, 460 U.S. 572, 757 (1983) (citations omitted); *United States v. Chabot*, 681 Fed. Appx. 134, 136 (3d Cir. March 13, 2017). "However, the burden is that of the defendant to introduce evidence beyond a mere assertion of inability, and to show that [she] has made in good faith all reasonable efforts to comply." *Harris*, 47 F.3d at 1324 (internal quotations and citations omitted).

Thompson has failed to establish an inability to comply with our June 18, 2018 order. She is correct that the writ instructs that the "garnishee is enjoined from paying any debt to or for the account of the defendant and from delivering any property of the defendant or otherwise disposing thereof." (*See* Doc. 408 at 2.) But Thompson's own statements – which show that the writ was not effectively served until on or after July 26, 2018 – undercut her argument. As she noted in her September 19, 2018 filing, Paddick's first two attempts to serve the writ were ineffective.[12] (*See*

---

[11] Although this argument is absent from both her response to Paddick's motion for contempt and her pre-hearing memorandum, she raised it in her August 23, 2018 Response to Order to Show Cause (Doc. 414 at 1-2), at the November 15, 2018 hearing, and in her November 27, 2018 Response to Paddick's Summary of Costs and Time. (Resp. to Costs at 4.)

[12] In his first attempt, Paddick attempted to serve Thompson at a Philadelphia address that she said no longer used even though she still listed it as her "Philadelphia Office" in email correspondence with Paddick and the Court. (*See* Doc. 411 at 2; Doc. 411-1.) In his second attempt, he sought to serve Thompson's bank, Fulton Bank. Service was ineffective, however, because he mistakenly addressed service to "Fulton Bank, NJ" rather than "Fulton Bank."

Doc. 427 at 2-3.) It was not until on or after July 26, 2018 that Paddick effectively served the writ on Thompson's IOLTA account at Fulton Bank. Thus, she retained the ability to disburse the funds until at least July 26, 2018. Her position is further undercut, however, by the fact that she paid her former clients on July 10, 2018 using funds from the same IOLTA account. This belies her contention that the July 3, 2018 issuance of the writ "prevented her from moving funds." Resp. to Costs. at 4.

In any event, Thompson has failed to meet her burden establishing that she took reasonable efforts to comply with the order. She might have, for example, asked Paddick to rescind the writ or petitioned this Court to suspend it under Rule 70 so that she could write a check. But she has offered no evidence to show that she made any effort to find a solution. The upshot is her bare assertion that her hands were tied because of the writ. The "mere assertion of inability," however, is not enough to meet her burden. *See Harris*, 47 F.3d at 1324. This defense must fail.

### 2. Right to appeal

Thompson's next argument boils down to her assertion that she is being "punished for exercising due process rights to an appeal and applying for a stay of execution of judgment pending the appeal." (Opp. Brief at 2.) Her motive for non-payment in this context was clear, as she believed that "once the money [was] distributed it [was] unlikely to be collected again." (*Id.*)

As discussed above, it is fundamental that pendency of appeal does not excuse obedience with a valid court order. *Maness v. Meyers*, 419 U.S. 449, 458 (1975) ("We begin with the basic proposition that all orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, [she] must comply promptly with the order pending appeal. Persons who make private determination of the law and refuse to obey an order generally risk criminal contempt even if the

order is ultimately ruled incorrect."); *see also Island Creek Coal Sales Co. v. City of Gainesville, Fla.*, 764 F.2d 437, 440-41 (6th Cir. 1985) ("Where, as here, the district court is attempting to supervise its judgment and enforce its order through civil contempt proceedings, pendency of appeal does not deprive it of jurisdiction for these purposes."). Thompson was entitled to exercise her appellate rights, and she has done so. While substantively the matter is pending, the Court of Appeals denied her request for a stay of our Orders of May 24, 2018 and June 18, 2018 by its Order dated July 17, 2018 and docketed August 23, 2018. *See Butt v. United Brotherhood*, No. 18-2272, BL-18 (3d Cir. Aug. 23, 2018). Accordingly, this defense fails.

### E. Compensatory Remedy

Finally, we must determine what remedy appropriately compensates Paddick for the attorney-time he incurred because of Thompson's failure to comply with the court order. In his November 15, 2018 Summary of Costs and Time, Paddick asks for $17,945.50 "for matters seeking payment since June 26, 2018." (Costs Summ. at 2.)

The Third Circuit has made clear that a district court has wide discretion in fashioning a civil contempt remedy. *See Delaware Valley Citizens' Council for Clean Air v. Com. of Pa.*, 678 F.2d 470, 478 (3d Cir. 1982) (citations omitted). The remedy itself is designed to place the complainant in the position he would have been had the contemnor complied with the court order. *Robin Woods Inc.*, 28 F.3d at 400. This includes compensating the complainant for the expense of investigating the violation of the order and preparing for and conducting the contempt proceeding, in addition to attorneys' fees. *See id.* at 401.

An award of attorneys' fees and costs to the prevailing party in a civil contempt action is determined according to the "lodestar method." *Horizon Unlimited, Inc. v. Silva*, No. 97-7430, 2002 WL 1896297, at *1-2 (E.D. Pa. August 15, 2002). The lodestar calculation involves

determining the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate, *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983), and is presumed to yield a "reasonable fee." Further, "under the lodestar method, '[t]he party seeking attorney's fees has the burden to prove that its request . . . is reasonable." *Clemens v. New York Central Mut. Fire Ins. Co.*, No. 17-3150, 2018 LEXIS 25803, at *7 (3d Cir. Sept. 12, 2018) (citation omitted). Once the party seeking fees provides such evidence the burden shifts to its adversary to contest, with sufficient specificity, the reasonableness of the hourly rate or the hours expended. *Rode v. Dellareciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990). If the party opposing the fee application meets its burden, the Court has wide discretion to adjust the attorneys' fee for inadequate documentation, duplication of effort, unreasonableness of hours expended, or lack of relation to the results obtained. *Ursic v. Bethlehem Mines,* 719 F.2d 670, 677 (3d Cir. 1983). A district court may also adjust the lodestar amount downward if the amount is not reasonable in light of the results obtained. *Rode*, 892 F.2d at 1183.

Paddick seeks $17,945.50 to compensate him for some 75.65 hours spent on execution of the judgment and in bringing this contempt motion. Thompson objects, arguing that Paddick is not entitled fees as a pro se litigant, that the fees of Michael Reed, Esq., whom Paddick engaged as counsel, are not compensable because a genuine attorney-client relationship did not exist, that the Court would be "double-paying" Paddick if we grant him recovery of attorney's fees, that his "travel time" is non-compensable, and that any fees, if at all granted, should be limited to the time period between June 26 and July 10, 2018.[13] (*See* Resp. to Costs. at 2-7.)

We note at the outset that Paddick can recover compensation for the attorney-time he incurred even though he represented himself pro se. It is undeniable that he incurred a loss—the

---

[13] We note that Thompson does not contest the reasonableness of the attorneys' hourly rates. Accordingly, we will not address those components of Paddick's application.

value of the time involved in seeking payment—and that that loss was the direct result of Thompson's disobedience. Because civil contempt sanctions sound in equity, we find it fundamentally fair for Thompson to pay for the value of the services necessitated by her noncompliance. *See Leman v. Krentler-Arnold Hinge Last Co.*, 284 U.S. 448, 457 ("[T]here is no reason why in [a contempt] proceeding equitable principles should not control the measure of relief to be accorded to the injured party."); *Delaware Valley*, 678 F.2d at 478 (noting that a district court possesses wide equitable discretion in fashioning a civil contempt remedy); *see also* J. Moore, Moore's Federal Practice, ¶ 54.173[1][a], p. 54-425 (3d ed. 2011) ("Pro se litigants, whether lawyers or not, generally may collect fees under any of the equitable exceptions to the American Rule. This is logical, for the exceptions permits fees where appropriate as a matter of equity, and equitable considerations may be present regardless of whether the fee movant was represented by counsel or not."). Paddick alerted Thompson that he would hold her responsible for fees if she continued to refuse payment. (*See, e.g.,* Doc. 426, Ex. M-2). We conclude that his losses justly fall upon her shoulders.

1. **Paddick's Time**

We have reviewed Paddick's Summary of Costs and Time and the attached time entries designated Exhibit "M-2a," in which he requests compensation for 75.65 hours of attorney-time expended from June 26, 2018 to November 15, 2018. For ease of reference, we consider his fee requests page by page using the time-entry exhibit docketed November 15, 2018. (Doc. 445-1.)

We decline to credit nearly all of the time expended between June 27, 2018 and July 27, 2018 in that we awarded him compensation for the same in our October 9, 2018 memorandum

13

opinion and order.[14] (*See* Doc. 445-1 at 2.) We do credit, however, the 5.6 hours expended preparing the motion for contempt, which we previously excluded from his October 9 award.[15] (*Id.*) Likewise, we credit the entries from August 3, 2018 to August 20, 2018 as they represent reasonable time spent as a result of Thompson's noncompliance with our order.[16] We thus find 8.57 hours of compensable time from page 2 of Paddick's filing.

We credit all of Paddick's time entries between August 22, 2018 and November 9, 2018 finding that they were reasonably expended with the exception of 0.37 hours titled "math is bad" and 1.12 hours spent traveling.[17] (*See* Doc. 445-1 at 3.) This amounts to 32.24 hours of compensable time. We decline to credit the time entries on the fourth page of his filing in that they related to Thompson's appeal, which did not give rise to this contempt motion. (*See* Doc. 445-1 at 4.) We credit Paddick's time entries on the fifth page—but exclude the travel time—in that they related to his preparation for contempt hearing.[18] (*See* Doc. 445-1 at 5.) Thompson's argument that such fees are unrecoverable is without merit, as it is well-settled in the Third Circuit

---

[14] We are sympathetic to Thompson's concern that Paddick might be "double-paid," as we awarded him $3,250.00 in attorney's fees in our October 9, 2018 memorandum opinion. In that opinion, we "reviewed the 25.76 hours Paddick spent on execution between June 26, 2018 and July 27, 2018" and credited him for 14.31 hours of his time. *See Paddick v. Butt*, No. 09-4285, 2018 WL 4899410, at *6 (E.D. Pa. Oct. 9, 2018). We clarified, however, that we were "declin[ing] to credit his June 29 and July 2 entries in that the work related only to his motion for contempt," which was not before us. *See id.* Accordingly, we will not presently award any fees for time expended between June 26, 2018 and June 27, 2018 with the exception of the previously-excluded time expended preparing the motion for contempt.

[15] 4.42 hours less 0.7 (deducting 40 minutes "for personal phone call and other interruptions") plus 0.33 plus 1.55 equals 5.6 hours.

[16] These entries total 2.97 hours.

[17] Thompson contends that "Paddick's travel time . . .must be excluded." (Resp. to Costs. at 6.) We agree, and accordingly we do not credit any travel time.

[18] These entries total 8.38 hours.

that a prevailing party in a civil contempt matter is entitled compensation for investigating, preparing and conducting the contempt proceeding. [19] *Robin Woods Inc. v. Woods*, 28 F.3d 396, 401 (3d Cir. 1994). Accordingly, we find that Paddick is entitled to 49.19 hours' compensation for time reasonably expended as a result of Thompson's noncompliance with our order compelling disbursement. [20] At his rate of $250.00 per hour, this amounts to $12,477.50.

**2. Reed's Time**

We finally consider what compensation, if any, Paddick is due for the time expended by Michael Reed, Esq., whom Paddick retained as counsel for "matters seeking [Thompson's] compliance . . . with the Court's orders for payment." (Costs Summ. at 1.) Thompson objects, arguing that Paddick "failed to present admissible evidence" regarding Reed's fees. (*See* Resp. to Costs. at 2.) She contends that Paddick presented only "hearsay testimony about Attorney Reed's activities" and that his documents are "unauthenticated." (*See id*.) [21]

Reed expended 7.61 hours "draft[ing] contempt papers . . . draft[ing] int[errogatories] for garnishment . . . [a]dvising [Paddick] by email and phone [about the] execution process" and performing similar attorney work. (*See* Doc. 445-1 at 13-14.) We find that this amount of time was reasonable for the subject matter involved and necessary in that execution was a prerequisite to payment in light of Thompson's noncompliance with the court order. And although Thompson objected to the presentation of this evidence at the hearing, we explicitly overruled her objection

---

[19] While Thompson argues that all time spent after October 15, 2018 was "spent to seek penalties against Thompson for exercising her due process rights," we note that that time was in fact spent preparing for the contempt hearing.

[20] 5.6 hours plus 2.97 plus 32.24 plus 8.38 equals 49.19 hours.

[21] To the extent she also argues that the testimony violated the Confrontation Clause of the Sixth Amendment to the United States Constitution (*see* Resp. to Costs. at 3), this argument is without merit. It is well established that the Confrontation Clause is inapplicable in civil cases. *Crawford v. Washington*, 541 U.S. 36, 42 (2004).

as Paddick himself testified as to the document's authenticity. (*See* Fed. R. Evid. 901(b)(1) (testimony of a witness with personal knowledge satisfies authentication requirement). Accordingly, we credit Reed's 7.61 hours at his rate of $300.00 per hour, which equals $2,283.00.

In sum, we thus credit Paddick for $14,760.50 in attorney time spent attempting to secure Thompson's compliance with this Court's order.

### III. CONCLUSION

By clear and convincing evidence, we find that Thompson knew of, and failed to comply with, our June 18, 2018 order compelling her to disburse funds to Paddick. Further, she failed to establish any valid defense. As a result of her noncompliance, Paddick took alternative measures to secure payment, and sought reimbursement for those efforts by bringing this contempt motion. For reasons stated above, we conclude that Thompsons must compensate him **$14,760.50** for those efforts representing the loss he incurred. An appropriate order follows.

/s/ David R. Strawbridge, USMJ

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE